**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **ELECTRONIC SCRIPTING PRODUCTS, INC.,** | Civil Action No.: 1:25-cv-00256 |
| Plaintiff, | |
| v. | **TRIAL BY JURY DEMANDED** |
| **DESIGNING DIGITALLY, INC.,** | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

COMES NOW Plaintiff, ELECTRONIC SCRIPTING PRODUCTS, INC. ("ESPi") and for its Complaint against Defendant DESIGNING DIGITALLY, INC. ("Designing Digitally"), alleges as follows:

## THE PARTIES

1.      Plaintiff Electronic Scripting Products, Inc. ("ESPi") is a company organized under the laws of the State of Delaware, having its principal place of business located at 446 Old County Road, Suite 201, Pacifica, CA 94044 and mailing address at 555 Bryant Street #142, Palo Alto, CA 95301.

2.      On information and belief, Designing Digitally is a corporation organized under the laws of the State of Ohio with its principal place of business located at 8401 Claude Thomas Road – Suite 30, Franklin, Ohio 45005.

3.      Upon further information and belief, Designing Digitally may be served with process care of Andrew M. Hughes, its Registered Agent, 1113 Springwater Court, Cincinnati, Ohio 45215.

1

## JURISDICTION AND VENUE

4.      This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq*.

5.      This Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Designing Digitally because it maintains a regular and established place of business in this District.  On information and belief, Designing Digitally has transacted and is continuing to transact business in this District that includes, but is not limited to, committing acts of patent infringement giving rise to this action by use and sale of products and systems that practice the subject matter claimed in the patent involved in this action.

7.      Venue is proper in this District under 1400(b) because Designing Digitally is a registered corporation in Ohio, upon information and belief has a regular and established place of business in this District and has committed acts of infringement here.

## FACTS

8.      On January 29, 2019, United States Patent No. 10,191,559 B2 entitled "Computer Interface For Manipulated Objects With An Absolute Pose Detection Component" was duly and legally issued.  A true and correct copy of United States Patent No. 10,191,559 B2 ("the '559 Patent") is attached hereto as Exhibit A and incorporated herein by this reference.

9.      ESPi is the assignee of the entire right, title and interest in and to the '559 Patent, including all rights to enforce the '559 Patent and to recover for infringement.

10.     Claim 1 of the '559 Patent claims:

1. A manipulated object cooperating with a first plurality of high optical contrast features disposed in a real three-dimensional environment, said manipulated object comprising:

a) a photodetector configured to detect said first plurality of high optical contrast features and generate photodetector data representative of the positions of said first plurality of high optical contrast features;

b) a controller configured to identify a derivative pattern of said first plurality of high optical contrast features from said photodetector data, wherein said derivative pattern is indicative of the position of said photodetector; and

c) at least one component selected from the group consisting of an auxiliary motion detection component, an active illumination component and a scanning component.

11.     On information and belief, Designing Digitally infringes Claim 1 of the '559 Patent by making, using, selling and/or offering to sell products in the United States, including in this District, that incorporate or use augmented or virtual reality ("Accused Products").

12.     Designing Digitally infringes each element of Claim 1 as follows:

"A manipulated object cooperating with a first plurality of high optical contrast features disposed in a real three-dimensional environment, said manipulated object comprising:" – To the extent that the preamble is included in an infringement analysis, below demonstrates the various elements – Designing Digitally uses a manipulated object embodied by a mobile device such as an iOS device or an Android device.



**LET'S CHAT ABOUT YOUR AUGMENTED REALITY VISION**

Our augmented reality apps combines innovation and practicality, offering an immersive learning experience that goes beyond traditional methods. From interactive data overlays, simulations, to real-world scenario-based experiences, our AR solutions empower learners to engage with content in ways that enhance comprehension and retention. If you're ready to revolutionize your training approach, connect with the Designing Digitally team today.

📞 866-316-9126
✉ info@designingdigitally.com

Smartphones, AR glasses, and tablets are commonly used devices for AR training, providing users with a seamless and interactive learning experience.

AR in employee development refers to the integration of digital information and interactive experiences into the real-world workplace training environment through devices like smartphones or AR glasses.

The device cooperates with high contrast features in the real three-dimensional environment, e.g., real features or markings/codes in the real three-dimensional environment (e.g., on a table) with its drawings and markings.

4

"a) a photodector configured to detect said first plurality of high optical contrast features and generate photodetector data representative of the positions of said first plurality of high optical contrast features;" – Designing Digitally uses a camera of an iOS device or Android device as the photodector to detect the high optical contrast features and generate data representative of the positions of these features (besides environmental features such as markings/cards in the environment are used):



Our AR solutions provide interactive and engaging training that prepares employees with the ability to manipulate objects and understand processes in real-time, and practice skills and procedures in an overlayed environment.

"b) a controller configured to identify a derivative pattern of said first plurality of high optical contrast features from said photodetector data, wherein said derivative pattern is indicative of the position of said photodetector; and" – Designing Digitally uses the iOS or Android device's processing unit(s) as controller that identifies the derivative pattern and this derivative pattern is indicative of the position of the photodetector here embodied by the camera:




"c) at least one component selected from the group consisting of an auxiliary motion detection component, an active illumination component and a scanning component." – Designing Digitally uses at least one of the iOS or Android device's auxiliary motion detection components such as inertial device (Inertial Measurement Unit IMU or motion sensing unit/motion sensor).

Our AR solutions provide interactive and engaging training that prepares employees with the ability to manipulate objects and understand processes in real-time, and practice skills and procedures in an overlayed environment.

**LET'S CHAT ABOUT YOUR AUGMENTED REALITY VISION**

Our augmented reality apps combines innovation and practicality, offering an immersive learning experience that goes beyond traditional methods. From interactive data overlays, simulations, to real-world scenario-based experiences, our AR solutions empower learners to engage with content in ways that enhance comprehension and retention. If you're ready to revolutionize your training approach, connect with the Designing Digitally team today.

866-316-9126

info@designingdigitally.com

13. Similarly, Designing Digitally also infringes Claims 6, 7, 10, 15, 16, 19, 24, and 25.

14. On November 2, 2010, United States Patent No. 7,826,641 B2 entitled "Apparatus And Method For Determining An Absolute Pose Of A Manipulated Object In A Real Three-Dimensional Environment With Invariant Features" was duly and legally issued. A true and correct copy of United States Patent No. 7,826,641 B2 ("the '641 Patent") is attached hereto as Exhibit B and incorporated herein by this reference.

15. ESPi is the assignee of the entire right, title and interest in and to the '641 Patent, including all rights to enforce the '641 Patent and to recover for infringement.

16. Claim 1 of the '641 Patent claims:

1. An apparatus for processing absolute pose data derived from an absolute pose of a manipulated object in a real three-dimensional environment, said apparatus comprising:

a) at least one invariant feature in said real three-dimensional environment;

b) an optical measuring means for optically inferring said absolute pose from on-board said manipulated object using said at least one invariant feature and expressing said inferred absolute pose with absolute pose data $(\phi, \theta, \psi, x, y, z)$ representing Euler rotated object coordinates expressed in world coordinates $(X_o, Y_o, Z_o)$ with respect to a reference location;

c) a processor for preparing said absolute pose data and identifying a subset of said absolute pose data; and

d) a communication link for transmitting said subset to an application.

17. On information and belief, Designing Digitally infringes Claim 1 of the '641 Patent by making, using, selling and/or offering to sell products in the United States, that incorporate or use augmented or virtual reality ("Accused Products").

18. Designing Digitally infringes each element of Claim 1 as follows:

"An apparatus for processing absolute pose data derived from an absolute pose of a manipulated object in a real three-dimensional environment, said apparatus comprising:" – To the extent that the preamble is included in an infringement analysis, below demonstrates the various elements: Designing Digitally has an apparatus for processing absolute pose data derived from an absolute pose of a manipulated object that is a mobile device such as an iOS or Android device held by a user in a real three-dimensional environment.

## LET'S CHAT ABOUT YOUR AUGMENTED REALITY VISION

Our augmented reality apps combines innovation and practicality, offering an immersive learning experience that goes beyond traditional methods. From interactive data overlays, simulations, to real-world scenario-based experiences, our AR solutions empower learners to engage with content in ways that enhance comprehension and retention. If you're ready to revolutionize your training approach, connect with the Designing Digitally team today.

📞 866-316-9126

✉ info@designingdigitally.com

Smartphones, AR glasses, and tablets are commonly used devices for AR training, providing users with a seamless and interactive learning experience.

AR in employee development refers to the integration of digital information and interactive experiences into the real-world workplace training environment through devices like smartphones or AR glasses.

"a) at least one invariant feature in said real three-dimensional environment;" – Designing Digitally uses at least one invariant feature in the real three-dimensional environment such as natural features or augmented reality card (cardz) positioned in the three-dimensional environmental (e.g. on a table) with the drawings and markings:



Where Designing Digitally uses an iOS device iSo's ARKit or equivalent (e.g., WebXR) looks for invariant feature.

"b) an optical measuring means for optically inferring said absolute pose from on-board said manipulated object using said at least one invariant feature and expressing said inferred absolute pose with absolute pose data ($\phi$, $\theta$, $\psi$, x, y, z) representing Euler rotated object coordinates expressed in world coordinates ($X_o$, $Y_o$, $Z_o$) with respect to a reference location;" – Designing Digitally uses a camera of an iOS or Android device as the optical measuring means for optically inferring said absolute pose from onboard an iOS or an Android device:

 

Further, it uses at least one invariant feature and expressing the absolute pose data by rotation angles (pitch, yaw, roll) expressing the orientation and (x,y,z) expressing the position portions of the absolute pose with respect to a reference location, in other words in world coordinates.

Our AR solutions provide interactive and engaging training that prepares employees with the ability to manipulate objects and understand processes in real-time, and practice skills and procedures in an overlayed environment.

"c) a processor for preparing said absolute pose data and identifying a subset of said absolute pose data; and" – Designing Digitally uses an iOS device's or an Android device's processing unit(s) as controller(s) for preparing the absolute pose data and identifying a subset of the absolute pose data (world tracking is done on device's processing resources) and identifying a subset of the absolute pose data, where the subset can include all the pose data (i.e., 6DoF).

AR enhances training by providing immersive, hands-on experiences, simulating real-world scenarios, and offering interactive learning content, improving engagement and knowledge retention.

Our AR solutions provide interactive and engaging training that prepares employees with the ability to manipulate objects and understand processes in real-time, and practice skills and procedures in an overlayed environment.

"d) a communication link for transmitting said subset to an application" – Designing Digitally uses a communication link internal to the manipulated object such as an iOS device or an Android device for transmitting the subset the subset to an application, e.g., a Designing Digitally application:



AR enhances training by providing immersive, hands-on experiences, simulating real-world scenarios, and offering interactive learning content, improving engagement and knowledge retention.

19.     Similarly, Designing Digitally also infringes Claim 29.

20.     ESPi is the assignee of the entire right, title and interest in and to the '540 Patent, including all rights to enforce the '540 Patent and to recover for infringement.

21.     Claim 1 of the '540 Patent claims:

1. An interface for producing an input from an absolute pose of an item associated with a user in a three-dimensional environment, said interface comprising:

a) a unit on-board said item, said unit configured to receive non-collinear optical inputs presented by at least one stationary object in said three-dimensional environment, said at least one stationary object having at least one feature detectable via an electromagnetic radiation, said at least one feature presenting a sufficient number of said non-collinear optical inputs for establishing a stable frame in said three-dimensional environment;

b) processing electronics employing a computer vision algorithm using a homography to recover said absolute pose of said item from a geometrical description of said non-collinear optical inputs in terms of absolute pose parameters in said stable frame and to generate a signal related to at least one of said absolute pose parameters;

c) an application employing said signal in said input, wherein said absolute pose of said item comprises at least three translational degrees of freedom and at least three rotational degrees of freedom, said at least one absolute pose parameter is related to at least one among said at least three translational degrees of freedom and said at least three rotational degrees of freedom by a mapping and at least one aspect of said application varies with said absolute pose of said item.

22. On information and belief, Designing Digitally infringes Claim 1 of the '540 Patent by making, using, selling and/or offering to sell products in the United States, including in this District, that incorporate augmented or virtual reality ("Accused Products").

23. Designing Digitally infringes each element of Claim 1 as follows:

"An interface for producing an input from an absolute pose of an item associated with a user in a three-dimensional environment, said interface comprising:" – To the extent that the preamble is included in the infringement analysis, Designing Digitally has an interface for producing an input from an absolute pose of an item, in this case Virtual Reality Headsets (VR HMD) or Augmented Reality Glasses (AR HMD).  The AR/VR HMD/Glasses is a wearable item, namely a piece of headgear such as Oculus Quest that is associated with a user in a three-dimensional environment and these AR/VR HMDs use Qualcomm's Snapdragon reference design (VR/MR/XR) or analogous.







"a) a unit on-board said item, said unit configured to receive non-collinear optical inputs presented by at least one stationary object in said three-dimensional environment, said at least one stationary object having at least one feature detectable via an electromagnetic radiation, said at least one feature presenting a sufficient number of said non-collinear optical inputs for establishing a stable frame in said three-dimensional environment" – Designing Digitally uses a unit on-board the item, i.e., a unit on-board the AR/VR HMD Worn item where this unit is the on-board camera(s) that receive non-collinear optical inputs (from tracked points or anchors in space):



The non-collinear optical inputs (from tracked points or world anchors in space) are presented by at least one stationary object in the three-dimensional environment, in other words, in uses a tracked environment that "lock" virtual content to the physical location in the three-dimensional environment:



The at least one stationary object having at least one feature detectable via an electromagnetic radiation and having sufficient number of non-collinear optical inputs for establishing a stable frame in the three-dimensional environment, here Designing Digitally uses stationary objects in the environment:



"b) processing electronics employing a computer vision algorithm using a homography to recover said absolute pose of said item from a geometrical description of said non-collinear optical inputs in terms of absolute pose parameters in said stable frame and to generate a signal related to at least one of said absolute pose parameters" – Designing Digitally uses electronics employing a computer vision algorithm using a homography (homography, aka projective or perspective transformation) to recover the absolute pose of the item or the AR/VR HMD/worn item from viewer perspective:



ADAPTING TO CHANGE: THE FUTURE OF WORK & L&D'S ROLE

From a geometrical description of the non-collinear optical inputs in terms of absolute pose parameters in the stable frame, i.e., the geometrical description using coordinates and to generate a signal related to at least one of the absolute pose parameters. Here, Designing Digitally provides signal for entire pose (all absolute pose parameters)., where Designing Digitally provides signal for entire pose (all absolute pose parameters also called 6 Degrees of Freedom or 6Def).

```
//
// Frame, Device Pose, and Views
//

[SecureContext, Exposed=Window] interface XRFrame {
  readonly attribute XRSession session;

  XRViewerPose? getViewerPose(XRReferenceSpace referenceSpace);
};
```

"c) an application employing said signal in said input, wherein said absolute pose of said item comprises at least three translational degrees of freedom and at least three rotational degrees of freedom, said at least one absolute pose parameter is related to at least one among said at least three translational degrees of freedom and said at least three rotational degrees of freedom by a mapping and at least one aspect of said application varies with said absolute pose of said item." – Designing Digitally uses an application employing the signal (all absolute pose parameters) of the item (AR/VR HMD/Worn item) including the at least three translational degrees of freedom and at least three rotational degrees of freedom in order to provide AR/VR you can wear with immersive augmented/virtual reality attraction.







And they map all the degrees of freedom to at least one aspect of the application, such as navigating in three-dimensional space for full immersive content of the augmented or virtual reality attraction such as an experience, digital education content or a game.

24.     Similarly, Designing Digitally infringes Claims 2, 11-15, 17-18, 25, 32, 36, 37, 39, 40, and 44-45, and 47-49 of the '540 Patent.

## FIRST CLAIM FOR RELIEF

### (Direct Infringement of the '559 in Violation of 35 U.S.C. § 271(a))

25.     ESPi refers to and incorporates herein by reference paragraphs 1-24.

26.     The '559 Patent is valid and enforceable.

27.     Designing Digitally has infringed and continues to infringe at least Claims 1, 6, 7, 10, 15, 16, 19, 24, and 25 of the '559 Patent under 35 U.S.C. 271(a), either literally or under the Doctrine of Equivalents, by making, using, selling or offering to sell the Accused Products.

28.     Designing Digitally has had knowledge and notice of the '559, as well as of its own infringement of the '559, since at least the date of the filing of this Complaint.

29.     ESPi has been and continues to be damaged by Designing Digitally's infringement of the '559.

30.     Designing Digitally's infringement of the '559 has been and continues to be willful.

## SECOND CLAIM FOR RELIEF

**(Inducing Infringement of the '559 Patent, in Violation of 35 U.S.C. § 271(b))**

31.     ESPi refers to and incorporates herein by reference paragraphs 1-30.

32.     Designing Digitally is also liable for indirect infringement under 35 U.S.C. §271(b), because Designing Digitally knowingly induced and continues to induce the direct infringement of one or more of the Claims by end-users and other third parties (i.e. wholesalers, retailers, customers, etc.) in the United States.

33.     Said-users and other third parties have directly infringed at least Claims 1, 10 and 19 of the '559 Patent by using or operating the Accused Products, in the manner for which such Accused Products were and are designed and marketed; that is when the Accused Products are used as Designing Digitally intends them to be used, the user and the act of usage thereof necessarily directly infringe the '559 Patent.

34.     Designing Digitally knowingly took active steps to induce end-users and other third parties in the United States to engage in direct infringement of the '559 Patent since Designing Digitally knew that when the Accused Products are used for their intended purpose by third parties and end users, such third parties and users directly infringe the claims of the '559 Patent. For example, to induce such third parties' and users' infringement, Designing Digitally, on information and belief, provided, sold, or promoted the Accused Products to end-users or other third parties along with specific instructions or training regarding the use of those products, which instructions or training actively induced said end-users and other third parties to practice one or more of the Claims and said instructions or training caused direct infringement of such Claims.

35.     Designing Digitally possessed the specific intent to induce direct infringement of the Claims by end-users and other third parties which intent was manifested, inter alia, by its

instructions and/or training for using the Accused Products to end users and third parties, and sale of the Accused Products to end users and third parties, and its knowledge of the '559 Patent and its knowledge that any use of the Accused Products by end-users and other third parties would necessarily directly infringe one or more of the claims of the '559 Patent.

36.     Designing Digitally knew or should have known that testing, demonstrating, marketing, making, using, offering to sell, selling, and/or importing the Accused Products constituted infringement of one or more of the claims of the '559 Patent, based on, among other things, the reasons alleged in the foregoing paragraph.

37.     By reason of the acts of Designing Digitally herein, ESPi has suffered damage in an amount to be proved at trial.

## THIRD CLAIM FOR RELIEF

### (Direct Infringement of the '641 in Violation of 35 U.S.C. § 271(a))

38.     ESPi refers to and incorporates herein by reference paragraphs 1-37.

39.     The '641 Patent is valid and enforceable.

40.     Designing Digitally has infringed and continues to infringe at least Claims 1 and 29 of the '641 Patent under 35 U.S.C. 271(a), either literally or under the Doctrine of Equivalents, by making, using, selling or offering to sell the Accused Products.

41.     Designing Digitally has had knowledge and notice of the '641, as well as of its own infringement of the '641, since at least the date of the filing of this Complaint.

42.     ESPi has been and continues to be damaged by Designing Digitally's infringement of the '641.

43.     Designing Digitally's infringement of the '641 has been and continues to be willful.

## FOURTH CLAIM FOR RELIEF

**(Inducing Infringement of the '641 Patent, in Violation of 35 U.S.C. § 271(b))**

44. ESPi refers to and incorporates herein by reference paragraphs 1-43.

45. Designing Digitally is also liable for indirect infringement under 35 U.S.C. §271(b), because Designing Digitally knowingly induced and continues to induce the direct infringement of one or more of the Claims by end-users and other third parties (i.e. wholesalers, retailers, customers, etc.) in the United States.

46. Said-users and other third parties have directly infringed at least Claims 1 and 29 of the '641 Patent by using or operating the Accused Products, in the manner for which such Accused Products were and are designed and marketed; that is when the Accused Products are used as Designing Digitally intends them to be used, the user and the act of usage thereof necessarily directly infringe the '641 Patent.

47. Designing Digitally knowingly took active steps to induce end-users and other third parties in the United States to engage in direct infringement of the '641 Patent since Designing Digitally knew that when the Accused Products are used for their intended purpose by third parties and end users, such third parties and users directly infringe the claims of the '641 Patent. For example, to induce such third parties' and users' infringement, Designing Digitally, on information and belief, provided, sold, or promoted the Accused Products to end-users or other third parties along with specific instructions or training regarding the use of those products, which instructions or training actively induced said end-users and other third parties to practice one or more of the Claims and said instructions or training caused direct infringement of such Claims.

48. Designing Digitally possessed the specific intent to induce direct infringement of the Claims by end-users and other third parties which intent was manifested, inter alia, by its

instructions and/or training for using the Accused Products to end users and third parties, and sale of the Accused Products to end users and third parties, and its knowledge of the '641 Patent and its knowledge that any use of the Accused Products by end-users and other third parties would necessarily directly infringe one or more of the claims of the '641 Patent.

49.     Designing Digitally knew or should have known that testing, demonstrating, marketing, making, using, offering to sell, selling, and/or importing the Accused Products constituted infringement of one or more of the claims of the '641 Patent, based on, among other things, the reasons alleged in the foregoing paragraph.

50.     By reason of the acts of Designing Digitally alleged herein, ESPi has suffered damage in an amount to be proved at trial.

## FIFTH CLAIM FOR RELIEF

### (Direct Infringement of the '540 Patent in Violation of 35 U.S.C. § 271(a))

51.     ESPi refers to and incorporates herein by reference paragraphs 1-50.

52.     The '540 Patent is valid and enforceable.

53.     Designing Digitally has infringed and continues to infringe at least 2, 11-15, 17-18, 25, 32, 36, 37, 39, 40, and 44-45, and 47-49 of the '540 Patent under 35 U.S.C. 271(a), either literally or under the Doctrine of Equivalents, by making, using, selling or offering to sell the Accused Products.

54.     Designing Digitally has had knowledge and notice of the '540 Patent, as well as of its own infringement of the '540 Patent, since at least the date of the filing of this Complaint.

55.     ESPi has been and continues to be damaged by Designing Digitally's infringement of the '540 Patent.

56.     Designing Digitally's infringement of the '540 Patent has been and continues to be willful.

### SIXTH CLAIM FOR RELIEF

**(Inducing Infringement of the '540 Patent, in Violation of 35 U.S.C. § 271(b))**

57.     ESPi refers to and incorporates herein by reference paragraphs 1-56.

58.     Designing Digitally is also liable for indirect infringement under 35 U.S.C. §271(b), because Designing Digitally knowingly induced and continues to induce the direct infringement of one or more of the Claims by end-users and other third parties (i.e. wholesalers, retailers, entertainment operators, e-sports venues and arcade operators) in the United States.

59.     Said-users and other third parties have directly infringed at least Claims 2, 11-15, 17-18, 25, 32, 36, 37, 39, 40, and 44-45, and 47-49 of the '540 Patent by using or operating the Accused Products, in the manner for which such Accused Products were and are designed and marketed; that is when the Accused Products are used as Designing Digitally intends them to be used, the user and the act of usage thereof necessarily directly infringe the '540 Patent.

60.     Designing Digitally knowingly took active steps to induce end-users and other third parties in the United States to engage in direct infringement of the '540 Patent since Designing Digitally knew that when the Accused Products are used for their intended purpose by third parties and end users, such third parties and users directly infringe the claims of the '540 Patent. For example, to induce such third parties' and users' infringement, Designing Digitally, on information and belief, provided, sold, or promoted the Accused Products to end-users or other third parties along with specific instructions or training regarding the use of those products, which instructions or training actively induced said end-users and other third parties to practice one or more of the Claims and said instructions or training caused direct infringement of such Claims.

61.     Designing Digitally possessed the specific intent to induce direct infringement of the Claims by end-users and other third parties which intent was manifested, inter alia, by its instructions and/or training for using the Accused Products to end users and third parties, and sale of the Accused Products to end users and third parties, and its knowledge of the '540 Patent and its knowledge that any use of the Accused Products by end-users and other third parties would necessarily directly infringe one or more of the claims of the '540 Patent.

62.     Designing Digitally knew or should have known that testing, demonstrating, marketing, making, using, offering to sell, selling, and/or importing the Accused Products constituted infringement of one or more of the claims of the '540 Patent, based on, among other things, the reasons alleged in the foregoing paragraph.

63.     By reason of the acts of Designing Digitally alleged herein, ESPi has suffered damage in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, ESPi prays for relief as follows:

A.      Judgment that Designing Digitally has directly infringed, and induced others to infringe, the '559 Patent either literally and/or under the doctrine of equivalents;

B.      Judgment that Designing Digitally has directly infringed, and induced others to infringe, the '641 Patent either literally and/or under the doctrine of equivalents;

C.      Judgment that Designing Digitally has directly infringed, and induced others to infringe, the '540 Patent either literally and/or under the doctrine of equivalents;

D.      Judgment awarding ESPi general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with proof, including

enhanced and/or exemplary damages, as appropriate, as well as all of Designing Digitally's profits or gains of any kind from its acts of patent infringement.

      E.     Judgment awarding ESPi all of its costs, including its attorneys' fees, incurred in prosecuting this action, including, without limitation, pursuant to 35 U.S.C. § 285 and other applicable law;

      F.     Judgment awarding ESPi pre-judgment and post-judgment interest; and

      G.     Judgment awarding ESPi such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

      Pursuant to Federal Rule of Civil Procedure 38(b), ESPi hereby demands a trial by jury on all issues triable to a jury.

Dated: April 21, 2025           Respectfully submitted,

                                 SAND, SEBOLT & WERNOW CO., LPA

                                 */s/ Howard L. Wernow*
                                 Howard L. Wernow (SBN 0089019)
                                 Aegis Tower – Suite 1100
                                 4940 Munson Street NW
                                 Canton, Ohio 44718
                                 Telephone: (330) 244-1174
                                 Facsimile: (330) 244-1173
                                 Email: howard.wernow@sswip.com

                                 John A. Lee (*Pro Hac Vice forthcoming*)
                                 BANIE & ISHIMOTO LLP
                                 2100 Geng Road #210
                                 Palo Alto, California 94303
                                 Telephone: (650) 241-2774
                                 Facsimile: (650) 241-2770
                                 Email: jlee@banishlaw.com

                                 *Attorneys for Plaintiff*
                                 *Electronic Scripting Products, Inc.*